UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDON MCCARRICK,

    Plaintiff,

vs.                                                  Case No. 12-11654

LAPEER COMMUNITY SCHOOLS,          HON. AVERN COHN
DEBBIE THOMPSON, TIMOTHY ZEEMAN,
and DANIEL RAYMOND, in their individual
and official capacities,

    Defendants.

_____/

**MEMORANDUM AND ORDER GRANTING
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 28)</u>**

**I. INTRODUCTION**

    This is a 42 U.S.C. § 1983 case arising out of an altercation between two students at Lapeer West High School ("Lapeer West") on April 13, 2010. Plaintiff Brandon McCarrick (McCarrick) was assaulted by Defendant Daniel Raymond (Raymond) while both were students at the high school. McCarrick contends that the school's principal was aware that Raymond was going to assault him and did nothing to prevent it. McCarrick is suing (1) Lapeer Community Schools ("Lapeer"), (2) Debbie Thompson (Thompson), now-retired former superintendent of Lapeer, (3) Timothy Zeeman (Zeeman), the principal at Lapeer West, and (4) Raymond.[1]

---

[1] McCarrick also sued Lapeer Community Schools Board of Education. The Court entered a stipulated order dismissing the case against the Board of Education (Doc. 11).

McCarrick's complaint is in five counts, phrased by him as follows:

Count I      Assault and Battery (Raymond)[2]

Count II     Gross Negligence (Thompson and Zeeman)

Count III    Violation of the Child Protection Law, Mich. Comp. Laws § 722.623[3]

Count IV    Violation of the Fourteenth Amendment (All but Raymond)

Count V     Supervisory Liability–42 U.S.C. § 1983 (All but Raymond)

Now before the Court is Defendants'[4] motion for summary judgment on counts II, IV, and V (Doc. 28). For the reasons that follow, the motion is GRANTED.

## II. BACKGROUND

In large part, the underlying facts are not in dispute.

McCarrick and Raymond were both students at Lapeer West during the 2009-2010 school year. During this period, Zeeman was the principal of the school and Thompson was the superintendent of the school district.

McCarrick testified at his deposition that, during this period, he and Raymond were good friends. (Doc. 28-6 at 9–10, McCarrick Dep.). They hung out together, went hunting, mud bogging,[5] and cut wood together, among other things. (*Id.* at 10). In April of 2010,

---

[2] Because of his failure to plead or otherwise defend, a Clerk's Entry of Default was entered against Raymond (Doc. 24).

[3] On August 21, 2012, the Court entered an order dismissing Count III (Doc. 22).

[4] For purposes of this order, "Defendants" refers to Lapeer, Thompson, and Zeeman, the school district defendants.

[5] McCarrick described mud bogging as "going out in your trucks in the mud in four-wheel drive, just tearing the fields up, or swamps, or little ponds." (Doc. 28-6 at 10, McCarrick Dep.).

2

however, McCarrick's and Raymond's friendship soured. According to McCarrick, mutual friends stole Raymond's animal traps and blamed McCarrick. (*Id.* at 11). In addition, McCarrick became involved with Raymond's former girlfriend.

## A. Raymond Visits Zeeman

On April 13, 2010, McCarrick and Raymond were both at school. Around 7:00 a.m., before the start of classes, Raymond went to see Zeeman in his office.

According to Zeeman, Raymond told him that he was upset because McCarrick was spreading rumors that Raymond was dealing in marijuana. (Doc. 28-4 at 8, Zeeman Dep.). Zeeman observed that Raymond was upset and frustrated. (*Id.*). Raymond told Zeeman that he wanted to confront McCarrick and talk to him about the accusations. (*Id.* at 9). Zeeman says he counseled Raymond and advised him that if the rumors were true, he needed to address his behavior and end his involvement in such activities. Based on Zeeman's conversation with Raymond, he did not have the feeling that Raymond wanted to physically harm McCarrick.

At the time Raymond was talking to Zeeman, Zeeman was aware that Raymond had been involved in physical altercations with other students in the past. However, Zeeman thought that Raymond had matured since his last altercation a year prior.

## B. Raymond Assaults McCarrick

Around 11:40 a.m., at the time between the change of classes, Raymond assaulted McCarrick in a hallway of the school. (Doc. 28-7 at 2, Incident Report). Raymond yelled out "Hey You" twice, and when McCarrick turned, Raymond hit him in the side of the head. Raymond hit McCarrick numerous times with his fists. (*Id.*). McCarrick suffered trauma to the face and head, and he lost consciousness. (*Id.*).

Immediately after the altercation, McCarrick and Raymond were brought to the main office. McCarrick was examined by Chris Sierakowski, a school official who was also an Emergency Medical Technician ("EMT"). Sierakowski observed fresh, raised welts on McCarrick's face, pink/red in color. (Doc. 28-8 at 14, Sierakowski Dep.). Because McCarrick was talking to Sierakowski and coherent, she did not deem it necessary to call emergency personnel. (*Id.* at 16–17).

**C. Zeeman Talks to Each Student**

While they were in the main office after the altercation, Zeeman, with the help of assistant principal Dean Rothgeb, talked separately to both McCarrick and Raymond. Zeeman determined that Raymond assaulted McCarrick and that McCarrick was not an active participant in the fight. (Doc. 28-4 at 22, Zeeman Dep.).

At one point, McCarrick says that Raymond started swearing at him in the office and tried to attack him again. Raymond was taken to Zeeman's office.

**D. McCarrick's Parents Arrive at School**

McCarrick's parents were contacted and informed about the altercation. The parties dispute who contacted McCarrick's parents. Sierakowski says that a staff member contacted McCarrick's parents. McCarrick says he contacted his mother himself.

On arrival at the school, Zeeman told McCarrick's parents what happened. McCarrick's step-father says that Zeeman told him that Raymond had indicated his intent to assault McCarrick that morning.

McCarrick left the school with his parents who took him to get medical attention. He was diagnosed with a cerebral concussion and closed head injury.

**E. Raymond Disciplined**

On the day of the altercation, Raymond was advised that he would be suspended from school for five days, the maximum initial suspension allowed for fighting under the school's Student Code of Conduct. After an internal investigation, Zeeman recommended to Thompson that Raymond be expelled from Lapeer Community Schools.

On April 26, 2010, an expulsion hearing was held. After the hearing, Thompson expelled Raymond. Raymond later petitioned to be readmitted to Lapeer Community Schools. His petition was denied.

McCarrick's mother says she talked to Raymond on March 30, 2012. She says that Raymond told her that Zeeman knew of Raymond's intent to assault McCarrick, and that Zeeman told Raymond that he was "the man."

### III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact.

Fed. R. Civ. P. 56(c)(1).

The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike Cnty. Bd. of Ed.*, 286 F.3d 366, 370 (6th Cir. 2002).

## IV. DISCUSSION

Defendants move to dismiss counts II (gross negligence), IV (violation of Fourteenth Amendment) and V (supervisory liability). The Court considers each count in turn.

**A. Count II (Gross Negligence)**

Count II of the complaint is a state-law claim brought against Thompson and Zeeman. McCarrick says that Thompson and Zeeman were grossly negligent in allowing him to be assaulted by Raymond. McCarrick's gross negligence claim fails against both Thompson and Zeeman as a matter of law.

**1. Thompson is absolutely immune.**

Under Mich. Comp. Laws § 691.1407(5), "the elective or highest appointive executive official of all levels of government [is] immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her . . . executive authority." At the time of the incident, Thompson was the superintendent of Lapeer Community Schools. McCarrick has not proffered any evidence that Thompson was not acting within the scope of her authority. Thus, Thompson is absolutely immune from tort liability under § 691.1407(5). *Nalepa v. Plymouth-Canton Cmty. Sch. Dist.*, 207 Mich. App. 580, 589 (1994) ("[W]e conclude that the superintendent of the school district is . . . absolutely immune from tort liability under Mich. Comp. Laws § 691.1407(5)."). Indeed, in his response brief, McCarrick concedes as much. (Doc. 30 at 23, McCarrick Resp. Br.).

**2. Governmental immunity shields Zeeman.**

Michigan's governmental immunity statute generally provides that employees of governmental agencies are "immune from tort liability for an injury to a person or damage to property caused by the . . . employee . . . while in the course of employment. . . ." Mich. Comp. Laws § 691.1407(2). However, three elements must be met for immunity to apply:

> (a) The . . . employee . . . is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The . . . employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

Mich. Comp. Laws § 691.1407(2)(a)–(c).[6]

The first two elements are not in dispute. The parties dispute the third element, particularly whether Zeeman was grossly negligent, and if so, whether he was the proximate cause of McCarrick's injuries.

It is not necessary to determine whether McCarrick proffered evidence establishing that Zeeman was grossly negligent because Zeeman was not the proximate cause of McCarrick's injuries. Thus, assuming without deciding that Zeeman was grossly negligent, he is still entitled to governmental immunity.

The Michigan Supreme Court in *Robinson v. City of Detroit*, 462 Mich. 439 (2000) thoroughly addressed the meaning of proximate cause in the governmental immunity statute. In *Robinson*, the Supreme Court considered two consolidated cases with similar facts: police officers chased fleeing vehicles and the chase resulted in death to a person other than the driver of the fleeing vehicle. *Id.* at 310–11. The question before the Supreme Court was "whether the city of Detroit or individual police officers face civil liability for injuries sustained by passengers in vehicles fleeing from the police when the fleeing car

---

[6] Section 691.1407 does not create a cause of action; "a plaintiff must first establish that the governmental employee defendant owed a common-law duty to the plaintiff." *Rakowski v. Sarb*, 269 Mich. App. 619, 628 (2006) (citing *Beaudrie v. Henderson*, 465 Mich. 124, 139 n.12 (2001)). Under Michigan law, principals have a duty to minimize injury to students in their charge. *Vargo v. Svitchan*, 100 Mich. App. 809 (1980).

caused an accident." *Id.* at 311. Finding that police officers owed a duty to innocent passengers in a fleeing vehicle, the Supreme Court turned next to the issue of proximate cause.

*Robinson* makes clear that there can only be one proximate cause for purposes of the governmental immunity statute. The Supreme Court reasoned that "[t]he Legislature's use of the definite article 'the' clearly evinces an intent to focus on one cause." *Id.* at 458–59.[7] Thus, "the phrase 'the proximate cause' is best understood as meaning the one most immediate, efficient, and direct cause preceding an injury." *Id.* at 459. The Supreme Court explained:

> [R]ecognizing that "the" is a definite article, and "cause" is a singular noun, it is clear that the phrase "the proximate cause" contemplates *one* cause. Yet, meaning must also be given to the adjective "proximate" when juxtaposed between "the" and "cause" as it is here. We are helped by the fact that this Court long ago defined "the proximate cause" as "the immediate efficient, direct cause preceding the injury." *Stoll v. Laubengayer*, 174 Mich. 701, 706 (1913). The Legislature has nowhere abrogated this, and thus we conclude that in Mich. Comp. Laws. § 691.1407(2)(c) the Legislature provided tort immunity for employees of governmental agencies unless the employee's conduct amounts to gross negligence that is the one most immediate, efficient, and direct cause of the injury or damage, i.e., the proximate cause.

*Id.* at 462 (emphasis in original).

Applying the definition of proximate cause to the facts of the consolidated cases, the Supreme Court held that the officers were immune from suit in tort because "[t]he one most

---

[7] The Supreme Court expressly overruled *Dedes v. Asch*, 446 Mich. 99 (1994), which held that the phrase "the proximate cause" in the statute meant "a proximate cause." *Id.* at 445–46, 458.

9

immediate, efficient, and direct cause of the plaintiffs' injuries was the reckless conduct of the drivers of the fleeing vehicles." *Id.* at 462.

*Robinson* is instructive on the issue of proximate cause. Here, like *Robinson*, Zeeman was not the "one most immediate, efficient, and direct cause" of McCarrick's injuries; Raymond was.

Michigan courts have consistently applied *Robinson* to shield from tort liability governmental employees who are not *the* proximate cause of a plaintiff's injuries. *See, e.g.*, *Jones v.* Bitner, 300 Mich. App. 65, 78 (2013) (reasoning that police officer who failed to report child abuse/neglect after witnessing undercover sale of morphine pills in a home with a young child was not the proximate cause of the child's death, where the child later died from ingesting morphine); *Rakowski v. Sarb*, 269 Mich. App. 619, 636 (2006) (reasoning that loose handrail was the proximate cause of plaintiff's fall, not defendant's failure to correctly approve ramp during inspection six months prior); *Cooper v. Washtenaw Cnty.*, 270 Mich. App. 506, 508, 510–11 (2006) (reasoning that inmate's suicide was the proximate cause of his death, not actions or inactions of law enforcement while inmate was in custody); *Kruger v. White Lake Twp.*, 250 Mich. App. 622 (2002) (reasoning that police officers were not proximate cause of woman's death when she escaped from the police station, ran into traffic, and was hit by a vehicle). This case is no different. To the extent that Zeeman was grossly negligent in failing to prevent Raymond from assaulting McCarrick, his gross negligence was not the proximate cause of McCarrick's injuries.

McCarrick misplaces his reliance on *Philpott v. City of Portage*, No. 4:05-CV-70, 2006 WL 2385316 (W.D. Mich. Aug. 17, 2006). In *Philpott*, the court reasoned that the defendant police officer's failure to loosen plaintiff's handcuffs despite hearing plaintiff's

10

complaints, if true, was the proximate cause of plaintiff's injuries. *Id.* at *7. This case is distinguishable. When a person is handcuffed and in police custody, police officers are the only ones who are able to loosen the handcuffs. In effect, the police officers have exclusive control over the cause of the injuries–the handcuffs. Here, unlike the situation in *Philpott*, Zeeman did not have exclusive control over Raymond, the person who caused McCarrick's injuries.

*Pardon v. Finkel*, 213 Mich. App. 643 (1995) is also inapposite. In *Pardon*, the court of appeals determined that sheriff's deputies hired by a private agency for crowd control services were not engaged in a governmental function and, therefore, not entitled to governmental immunity. *Id.* at 649. *Pardon*'s holding has no bearing on the issues in this case.

In sum, Zeeman is immune from suit for gross negligence under Michigan's governmental immunity statute because Raymond, not Zeeman, was the proximate cause of McCarrick's injuries.

**B. Count IV (Violation of Fourteenth Amendment)**

Count IV of the complaint claims a violation of the Fourteenth Amendment's substantive Due Process Clause. As best as can be gleaned from McCarrick's complaint and papers, this count is premised on two arguments. First, McCarrick says that Lapeer's failure to have a written policy about the proper action to be taken by school officials after a fight violated his due process rights to be free from bodily injury. This argument has no merit. Second, McCarrick says his due process rights were violated because Zeeman knew that Raymond was going to assault him but did nothing to prevent it. This argument likewise fails.

**1. The Law**

The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV. However, as the Supreme Court has explained, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Indeed, the Supreme Court went on to state:

> The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*Id.* Thus, the general rule is that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197. In other words, "[t]he purpose of the Due Process clause is 'to protect people from the State, not to ensure that the State protect[s] them from each other.'" *Soper v. Hoben*, 195 F.3d 845, 852 (6th Cir. 1999).

However, there are two exceptions to the general rule, "instances where the state is obligated to aid or protect an individual from further danger: 1) the custody exception and 2) the state created danger exception." *Peete v. Metro. Gov't of Nashville and Davidson Cnty.*, 486 F.3d 217, 223 (6th Cir. 2007) (citing *Jackson v. Schultz*, 429 F.3d 586, 590–91 (6th Cir. 2005)). McCarrick invokes the state-created danger exception in this case.

As explained by the Sixth Circuit, "[t]he state-created danger exception applies where the state causes or greatly increases the risk of harm to its citizens without due process of law through its own affirmative acts." *Id.* at 223 (citing *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)). To prove liability under the state-created danger exception, a plaintiff must show the following:

> (1) affirmative acts by the state that "create or increase the risk that an individual will be exposed to private acts of violence;"
> (2) that the state's actions placed the victim "specifically at risk, as distinguished from a risk that affects the public at large;" and
> (3) that the state knew or "clearly should have known that its actions specifically endangered an individual."

*Id.*

### 2. The state-created danger is not applicable to this case

McCarrick's Fourteenth Amendment claim based on the state-created danger exception fails for a fundamental reason: none of the Defendants *created* or *increased* the risk of harm to McCarrick. McCarrick is not claiming Zeeman told Raymond to assault him. Nor is McCarrick claiming that Zeeman instigated the fight after Raymond told him that he wanted to assault McCarrick. Rather, McCarrick says that Zeeman sat by idly knowing that McCarrick might be at risk of harm. This is not enough to establish liability under the state-created danger exception.

Courts considering analogous cases have determined that the state-created danger exception does not apply to allow a plaintiff to assert a substantive due process claim under the Fourteenth Amendment. In one such case, *Vidovic v. Mentor City Sch. Dist.*, 921 F. Supp. 2d 775 (N.D. Ohio 2013), a sixteen-year-old high school student committed suicide.

13

His parents brought suit against the school district and school employees alleging that their failure to prevent students from bullying and harassing their son violated their constitutional rights. The court observed that, "[w]hile it may seem that a school, of all places, should provide a safe and supportive environment for the children in its care, it is well settled that a school does not meet the requisite level of control over its students to give rise to a constitutional duty to protect." *Id.* The court recognized that "[b]oth the U.S. Supreme Court and the Sixth Circuit have repeatedly held that a failure to act, even with knowledge that a risk of harm may exist without state intervention, is not enough to confer liability under the Fourteenth Amendment." *Id.* (citing *DeShaney*, 489 U.S. at 197; *Patterson v. City of Detroit*, No. 08-cv-10732, 2008 WL 4858440 (E.D. Mich. Nov. 10, 2008); *Jones v. Reynolds*, 438 F.3d 685 (6th Cir. 2006); *Schroder v. City of Fort Thomas*, 412 F.3d 724, 728–29 (6th Cir. 2005); *Weeks v. Portage Cnty. Exec. Offices*, 235 F.3d 275 (6th Cir. 2000)). Thus, the court concluded that, "although parents should be able to expect that their children will be kept reasonably safe when under the school's supervision . . . , the school has no *constitutional* duty to protect or rescue [students] from harm imposed by other students." *Id.* (emphasis in original).

In *Soper v. Hoben*, 195 F.3d 845, 848 (6th Cir. 1999), a special education student was harassed, molested, and raped by three of her classmates at school and on the bus. The student and her mother sued the school and school employees. The student's mother stated that she had previously told school employees to keep an extra eye on her daughter and make sure that she was not left alone with boys. The Sixth Circuit rejected the notion that the school or its employees were liable under the Due Process Clause:

> It is clear that a constitutional violation arises if a school official physically violates a student. *See, e.g.*, *Doe v. Claiborne Cnty.*, 103 F.3d 495 (6th Cir. 1996) (holding schoolchild's right to personal security and bodily integrity manifestly embraces right to be free from sexual abuse at the hands of a public schoolteacher). However, the [plaintiffs] argue that Boys A, B, and C violated [plaintiff's] protected liberty interest in bodily integrity and that because the students who harmed [plaintiff] were under the control of the [school] and because [the school] had a "special relationship" with [the plaintiff], [the school] may be held liable for violating [her] Due Process rights. The district court correctly found that this argument fails, as the facts at bar do not give rise to a constitutional violation. First, the persons who harmed [the plaintiff] were private actors, not governmental or school officials acting under color of state law or pursuant to governmental or school policies. Additionally, there is no "special relationship" between the school and [the plaintiff].

*Id.* at 852–53 (internal citations omitted).

This case is no different than *Vidovic* and *Soper*. McCarrick cannot bring a due process claim against Defendants based on injuries he suffered at the hands of a private actor, Raymond. Neither the school nor the school employees had a constitutional duty to protect McCarrick from being harmed by another student.

## C. Count V (Supervisory Liability)

In count V, McCarrick says that Defendants are liable for his injuries for failing to have appropriate policies in place to address school fights. McCarrick's claim fails as a matter of law. As explained above, Defendants do not have a *constitutional* duty to prevent students from physically harming other students.

In addition, Defendants have provided evidence that student-on-student violence is addressed in the Board of Education Policies, Student Code of Conduct, and Student
15

Handbook. Thus, even if McCarrick could establish an underlying constitutional violation, he has not proffered evidence creating a genuine issue of material fact on the supervisory liability claim.

## V. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment was granted. Counts II (gross negligence), IV (violation of Fourteenth Amendment) and V (supervisory liability) were dismissed. This case proceeds against Raymond, only, on count I (assault and battery).[8]

SO ORDERED.

Dated: August 27, 2013
                                                  s/Avern Cohn
                                                  AVERN COHN
                                                  UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 27, 2013, by electronic and/or ordinary mail.

                                                  s/Sakne Chami
                                                  Case Manager
                                                  (313) 234-5160

---

[8] Although the Clerk has entered a default against Raymond, McCarrick has not filed a motion for default judgment.